UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRIPLE S PROPERTIES INC.,           §
     Plaintiff,                    §
                                   §
v.                                  §          CIVIL ACTION NO. 3:08-CV-796-O
                                   §
ST. PAUL SURPLUS LINES              §
INSURANCE COMPANY,                  §
     Defendant.                   §

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Complaint for Declaratory Relief, Motion to Set Aside

the Appraisal Award, and Alternative Motion to allow Appraisal Related Discovery ("Def.'s Mot.

to Set Aside") (ECF No. 34), Plaintiff's Response (ECF No. 38), Defendant's Motion to Strike

Plaintiff's Response as Untimely (ECF No. 39), Plaintiff's Response to Defendant's Motion to

Strike (ECF No. 40), and Plaintiff's Answer and Counterclaim for Declaratory Relief (ECF No.

41). After considering the pleadings, arguments and applicable authorities, the Court concludes

as follows:

I.       **BACKGROUND**

Plaintiff owns a facility located in Dallas, Texas, that formerly operated as a meat-packing

plant. Pl.'s Orig. Pet. ¶ 6-7, ECF No. 1. At the time of the loss, the property was insured under a

commercial insurance policy issued by Defendant. *Id.* After investigating the claim, Defendant

paid Plaintiff $735,000 in satisfaction of Plaintiff's claim. Def.'s Mot. To Set Aside ¶ 10, ECF

No. 34. The parties disputed whether $735,000 fully satisfied Plaintiff's claim under the policy.

Joint Pretrial Order 2, ECF No. 33. The Court has already covered the facts of this dispute in

1

detail.  *See* Order 2-4, ECF No. 27.  Ultimately, the Court granted summary judgment for

Defendant on all of Plaintiff's claims, leaving only Defendant's counterclaim for declaratory relief.

*Id.* at 14; *see also* Joint Pretrial Order 2, ECF No. 33.

Following the order granting summary judgment on Plaintiff's claims, the parties agreed

that the sole remaining issue of fact was the valuation of Plaintiff's property.  Joint Pretrial Order

2, ECF No. 33.  In the Joint Pretrial Order, the parties agreed to submit to an appraisal process in

accordance with the insurance policy.  *Id.*  Each party would choose an appraiser.  *Id.*  The

appraisers or, to the extent they disagreed, the umpire chosen by the parties, would then set forth

two evaluations:

> (a) The actual cash value of the entire building at the time of the alleged loss.  This
> valuation will involve the accepted real estate appraisal methods for establishing the fair
> market value of real estate; and (b) The amount it would cost to repair or replace the
> damaged portions of the property with similar kind or quality.

*Id.* at 1-2.  Defendant would then owe the smaller of the two numbers.  *Id.* at 2.  Pursuant to this

agreement, the Court dismissed Defendant's remaining counterclaim for declaratory relief without

prejudice from the bench at the pretrial hearing held on May 20, 2010.  Pretrial Hr'g Tr. 4-5, May

20, 2010.

Pursuant to the parties' agreement and this Court's pretrial order, the appraisal occurred

on June 7, 2010.  Joint Pretrial Order 2, ECF No. 33; *see also* Pl.'s Resp. to Def.'s Mot. 1-2,

ECF No. 38.  Triple S's principal, Steven Spiritas, his son, Jason Spiritas, and Triple S's

appraiser, Allen D. Bealmear, appeared for Triple S.  *See* Def.'s Mem. Supp. Mot. Set Aside ¶ 17,

ECF No. 34; *see also* Pl.'s Resp. Def.'s Mot. 2 n.1, ECF No. 38.  Gary B. Treider and Jeff W.

Briggs appeared for St. Paul.  *See* Def.'s Mem. Supp. Mot. Set Aside ¶ 17, ECF No. 34; *see also*

Pl.øs Resp. Def.øs Mot. 2 n.1, ECF No. 38. The umpire issued his award on June 11, 2010. *See* Def.øs Mem. Supp. Mot. Set Aside ¶ 2. ECF No. 34. The umpire set the actual cash value of the property at $2,552,463 and the cost to repair or replace the property at $2,575,526. Pl.øs Resp. Def.øs Mot. 2, ECF No. 38.

On July 10, 2010, Defendant filed its Complaint for Declaratory Judgment, Motion to Set Aside the Appraisal Award, and Alternative Motion for Leave to Conduct Appraisal Discovery on July 10, 2010, which is now before the Court. *See* ECF No. 34. Defendant asks the Court to declare the appraisal invalid and set it aside on five grounds: (1) that Triple Søs appraiser and the umpire did not comply with the protocol for determining actual cash value as agreed in the Joint Pretrial Order; (2) the award was not made in substantial compliance with the Joint Pretrial Order; (3) the award was not made in substantial compliance with the insurance policy; (4) the award resulted from fraud by Triple Søs appraiser Allen D. Bealmer; and/or (5) the award resulted from mistake. *See* Def.øs Mem. Supp. Mot. Set Aside ¶ 26, ECF No. 34. Plaintiff responded, denying all five grounds. *See* Pl.øs Resp. Def.øs Mot. 3-8, ECF No. 38.

## II.    <u>JURISDICTION</u>

The Court must raise the issue of subject matter jurisdiction *sua sponte*. Jurisdiction in the instant case is governed by the Fifth Circuitøs recent decision in *SmallBizPros, Inc. v. MacDonald*, No. 09-50879, 2010 WL 3421779 (5th Cir. Sept. 1, 2010) (per curiam), outlining the requirements for a district court to exercise ancillary jurisdiction over a settlement agreement following dismissal. Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). They lack the power to adjudicate claims falling outside the jurisdiction conferred by the Constitution or federal statute. *Id.* õEnforcement of [a]

settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378.  Ancillary jurisdiction properly exists where it "enable[s] a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 380.

In *SmallBizPros*, the Fifth Circuit considered a district court's jurisdiction over breach of a settlement agreement that formed the basis of the parties' stipulation of dismissal under Rule 41(a)(1)(A)(ii).  *See* 2010 WL 3421779 at *1.  After the parties signed the stipulation of dismissal, they sent the stipulation along with a "Stipulation Order" and copy of the settlement to the court for signature.  *Id.*  The Order did not embody or contain the terms of the settlement agreement, which was at most physically attached to the Order.  *Id.*  The Order "contained a signature block but no –so ordered or other operational language.'" *Id.* at *2.

In assessing whether the district court had jurisdiction, the Fifth Circuit discussed the two ways a district court could ensure ancillary jurisdiction over a settlement agreement. *SmallBizPros*, 2010 WL 3421779 at *2-5.  A district court "may incorporate or embody the terms of a settlement agreement in a dismissal order *or* expressly retain jurisdiction over a settlement agreement by clearly indicating such intent in a dismissal order." *Id.* at *4 (citing *Kokkonen*, 511 U.S. at 381-82; *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 431 (5th Cir. 2002)) (emphasis added).  In order to satisfy the second prong, the district court must use "explicit –retention of jurisdiction' language." *Id.*

At the Pretrial Hearing this Court signed the Joint Pretrial Order, which embodied the agreement of the parties, and dismissed the case from the bench.  Pretrial Hr'g Tr. 4-5, May 20, 2010.  The Order contained all the relevant terms of the parties' agreement.  *See* Joint Pretrial

4

Order 1-2, ECF No. 33.  However, the Order does not mention jurisdiction, contain language of dismissal, or contain any operational language.  *Id.* at 1-3.  As such, under the strict standards imposed by *Kokkonen* and *SmallBizPros*, the Order alone is insufficient grounds for the Court to exercise ancillary jurisdiction.  On the other hand, the Court's dismissal from the bench, the actual dismissal order in the instant case, "expressly manifested" intent to retain jurisdiction over the settlement agreement.  *SmallBizPros*, 2010 WL 3421779 at *4-5.  The Court stated that it would "specifically retain ancillary jurisdiction" over the agreement of the parties as contained in the pretrial order.  Pretrial Hr'g Tr. 4-5, May 20, 2010.  This language comports with the strictures of both *Kokkonen* and *SmallBizPros*.  *See* 511 U.S. at 377-82; 2010 WL 3421779 at *2-5. Therefore, the Court retained jurisdiction to enforce the terms of the settlement agreement.

Such retention, however, is not limitless and does not require or invite the Court to decide all the issues presented.  Under the strict requirements of *Kokkonen* and *SmallBizPros*, Plaintiff's counterclaims for Breach of Contract and Unfair Settlement Practices constitute a new dispute, rather than simple enforcement of the settlement agreement.  *See* Pl.'s Answer & Counterclaim ¶ 13-16, ECF No. 41.  As in *Kokkonen*, Plaintiff's counterclaims "involve[] a claim for breach of a contract" connected to an earlier dismissal, and "[n]o federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute." *Kokkonen*, 511 U.S. at 381.  As such, neither of Plaintiff's claims fall under this Court's ancillary jurisdiction pursuant to the limited retention of jurisdiction to enforce the parties' settlement agreement as embodied in the pretrial order.

Similarly, the Court finds the connection between Defendant's fourth and fifth stated grounds to set aside the instant appraisal and the Court's retention of jurisdiction over the

5

settlement agreement too attenuated to justify assertion of ancillary jurisdiction under the strict standards articulated in *Kokkonen* and *SmallBizPros*. *See* Def.'s Mem. Supp. Mot. Set Aside ¶ 26, ECF No. 34. Adjudicating the issues of fraud, mistake and accident would not constitute enforcing the settlement agreement. This Court may exercise ancillary jurisdiction over the instant settlement agreement to "vindicate its authority, and effectuate its decrees." *See Kokkonen*, 511 U.S. at 380. Defendant's charges of fraud, mistake, and accident constitute attacks not upon the procedure of the appraisal as laid out in the pretrial order, but upon the validity of the appraisal and the decision of the umpire. Such claims are not necessarily connected to the pretrial order and do not fall under this Court's ancillary jurisdiction.

Even if they did properly fall under this Court's ancillary jurisdiction, the Court declines to exercise such jurisdiction. *See Bingham Fire Ins. Co. of Penn. v. Winegardner & Hammons, Inc.*, 714 F.2d 548, 550-51 (5th Cir. 1983). Ancillary jurisdiction is a discretionary doctrine allowing district courts to vindicate their decrees. *Id.* This Court declines to exercise ancillary jurisdiction over Defendant's fourth and fifth grounds alleging fraud, mistake and accident.

Accordingly, the Court retains ancillary jurisdiction only over the first three grounds of Defendant's Motion to Set Aside.

## III.    LEGAL STANDARD

Appraisal clauses are enforceable under Texas law. *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (citing *Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. 630, 631 (Tex. 1888)). While trial courts have "some discretion as to the timing of an appraisal, they have no discretion to ignore a valid appraisal clause entirely." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009) (citing *In re Allstate*, 85 S.W.3d at 196). A valid appraisal does

not "divest the courts of jurisdiction, but only binds the parties to have the extent or amount of the loss determined in a particular way." *Id.* at 889 (quoting *Scottish Union*, 8 S.W. at 631). Appraisers decide the amount of loss; they do not construe the policy or decide liability. *Id.* at 890.

Every reasonable presumption should be made in favor of appraisal awards. *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.–San Antonio 1994, no writ). While "[a]ppraisal awards made pursuant to the provisions of a contract are binding and enforceable" *id.* at 877, "Texas courts recognize three situations in which an appraisal award may be disregarded." *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App.–Dallas 1996, writ denied). An award may be disregarded when made without authority, when not made in substantial compliance with the terms of the contract, and when it results from fraud, accident or mistake. *Id.* As discussed above, the Court only takes up the first two situations.

**(1) When the award was made without authority.**

"An appraiser's acts in excess of the authority conferred upon him by the appraisal agreement is not binding on the parties." *Fisch v. Transcon. Ins. Co.*, 356 S.W.2d 186, 190 (Tex. App.–Houston 1962, writ ref'd). In *Fisch*, the umpire issued an award after hearing from only one appraiser. Because the "umpire's power to act [was] conditioned upon disagreement between the appraisers," the court found that the umpire acted without authority, rendering the award invalid. *Id.* at 190-91. Texas courts have held that umpires act without authority when they decide issues of coverage, liability, or causation. *See, e.g. Wells*, 919 S.W.2d at 683; *but see State Farm Lloyds*, 290 S.W.3d at 893 ("Any appraisal necessarily includes some causation

element . . . . ").

*Id.*

**(2) When the award was not made in substantial compliance with the terms of the contract.**

"[A]n award which is not made substantially in compliance with the requirements of the policy will not be sustained." *Fisch*, 356 S.W.2d at 190. "Texas courts interpret insurance policies according to the rules of contract interpretation." *Vought Aircraft Indus., Inc. v. Falvery Cargo Underwriting, Ltd.*, No. 3:08-CV-727-O, 2010 WL 2573214, at *4 (N.D. Tex. June 25, 2010) (citing *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005)). Courts must "ascertain the parties' intent as expressed in the language of the policy" and "give effect to all of a policy's provisions so that none is rendered meaningless." *Id.* at *4. In accord with traditional rules of contract interpretation, if a "contract is worded so that it can be given a definite meaning, it is unambiguous and a judge must construe it as a matter of law." *Int'l Ins.*, 426 F.3d at 291. Deciding whether contractual language is ambiguous is a question of law for the court to decide. *Id.*

**IV.** <u>**ANALYSIS**</u>

**A. Defining Actual Cash Value**

Defendant's central complaint, which runs through all five of its stated grounds for declaratory relief, is that Plaintiff, Plaintiff's appraiser, and the umpire used an improper definition of actual cash value ("ACV"). Indeed, that definition forms almost the sole basis for Ground 1, alleging noncompliance with the Joint Pretrial Order, Ground 2, alleging lack of authority, and Ground 3, alleging noncompliance with the appraisal clause of the insurance policy. *See* Def.'s

Mem. Supp. Mot. to Set Aside ¶ 27-39, ECF No. 34. Defendant claims that Plaintiff, Plaintiff's appraiser, and the umpire failed to value the ACV of the building using "accepted real estate appraisal methods for establishing the fair market value of real estate," as required by both the policy language and the pretrial order. *Id.* at ¶ 27

Under the heading "Appraisal of Property Disputes," the insurance policy provides a four-step procedure for securing an appraisal of insured property in the event "agreement can't be reached on the amount of a property loss or the value of the property." App. Supp. Resp. Mot. Summ. J., ECF No. 25-1. The four steps outlined by the policy are as follows:

1. One of us will make a written demand for an appraisal.
2. Each will select a competent and impartial appraiser and notify the other of the selection within 30 days of the demand.
3. The appraisers will select a competent and impartial umpire. If they can't agree on an umpire, either may ask that one be selected by a judge of a court having jurisdiction.
4. The appraisers will state separately the amount of the loss and the value of the property. If they don't agree, they'll submit their appraisals to the umpire. Agreement of two of three will be binding.

*Id.* The policy does not contain the term ACV, fair market value, or any other specific reference to the terms the parties have used in their briefings.[1] Defendant argues that Plaintiff failed to state the value of the property because Plaintiff's appraiser applied "a standard for [ACV] of his own choosing (replacement-cost-less-depreciation) rather than that agreed upon by the parties and recited in this Court's Joint Pretrial Order (fair market value)." *See* Def.'s Mem. Supp. Mot. to Set Aside ¶ 32, ECF No. 34. As illustrated by both the language of the policy and Defendant's

---

[1] "It is axiomatic that under Federal Rules of Civil Procedure 15 and 16, a final pretrial order ‑supersede[s] all prior pleadings." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007)). As such, the parties' agreement that the term ACV means fair market value governs the parties and this Court's interpretation of the insurance policy. *See* Joint Pretrial Order 2, ECF No. 33.

argument, the actual language of the policy does not define "amount of the loss" or "the value of the property." Thus, Defendant is actually relying upon the agreement between the parties regarding the definition of ACV as embodied in the Joint Pretrial Order when attacking the validity of the instant appraisal.

The Joint Pretrial Order embodied the agreement of the parties in advance of the Court's dismissal of the case and the appraisal at issue. *See* Joint Pretrial Order, ECF No. 33. The Order notes that Defendant "is entitled to a completed appraisal in accordance with the policy terms." *Id.* at 1. The appraisers and, failing agreement between the appraisers, the umpire must set out "two separate and independent valuations." *Id.* First, the "[ACV] of the entire building [which] involve[s] the accepted real estate appraisal methods for establishing the fair market value of real estate." *Id.* The second valuation includes "the amount it would cost to repair or replace." *Id.* at 1-2. Defendant argues that the statement "real estate appraisal methods for establishing the fair market value of real estate" disallows Plaintiff's appraiser's method of replacement-cost-less depreciation. If Defendant is correct, then the appraisal is invalid as outside the scope of the policy and in violation of the agreement of the parties as embodied in this Court's Joint Pretrial Order.

Defendant relies solely upon the affidavits of Defendant's appraisers for the contention that there exists only one method for calculating fair market value and, therefore, only one way to calculate ACV under the terms of the policy and the pretrial order. *See* Def.'s Mem. Supp. of Mot. to Set Aside ¶ 18-21, ECF No. 34. Under Texas law, however, fair market value can be "quantified in one of three ways: (1) comparable sales; (2) the income capitalization approach; or (3) *the cost of repair or replacement less depreciation*." *Ghoman v. N. H. Ins. Co.*, 159 F. Supp.

2d 928, 934 (N.D. Tex. 2001) (citing *Religious of the Sacred Heart of Tex. v. Houston*, 836

S.W.2d 606, 615-16 (Tex. 1992)) (emphasis added). All three of these methods quantify "the

price a willing purchaser who is under no obligation to buy would pay to a willing owner who is

under no obligation to sell." *Id.*

Accordingly, the Court finds that under Texas law, the term "fair market value" can be

defined in three ways, including replacement cost less depreciation. Thus, Plaintiff, Plaintiff's

appraiser, and the umpire did not violate either the insurance policy or this Court's pretrial order

by employing replacement cost less depreciation to quantify the ACV. This effectively eliminates

Grounds 1 and 3 of Defendant's Complaint for Declaratory Relief and Motion to Set Aside.

### B. Authority

Defendant argues that Plaintiff's appraiser and the umpire acted outside the scope of their

authority because they used replacement cost less depreciation to quantify ACV and because

Plaintiff's principal "injected policy coverage and liability into the appraisal process." *See* Def.'s

Mem. Supp. Mot. to Set Aside ¶ 28-31, ECF No. 34. The Court has already dealt with the first

prong of Defendant's argument, finding replacement cost less depreciation an appropriate way to

quantify fair market value and ACV.

As for the second prong, Defendant alleges that Plaintiff's principal, Steven Spiritas, acted

"as a *de facto* ÷co-appraiser." *Id.* at ¶ 30. Moreover, he "improperly injected improper facts and

issues that, as a matter of law, fatally corrupt the appraisal process." *Id.* Such facts and issues

include Plaintiff's disagreement about the "fair market value" language in the pretrial order, what

Defendant's sales agent allegedly represented, "as well as claim-handling, underwriting, policy

coverage, and coinsurance analysis." *Id.* Specifically, Mr. Spiritas gave the umpire "at least two

St. Paul Property Large Loss Reports," which discussed the insurance policy, and "a word-processed document entitled ─TRIPLE S INSURANCE CLAIM HISTORY," which discussed a host of coverage, definition, and other policy issues. *Id.* Defendants argue that due to such documents, "the appraisal process ceased to be one of valuation only . . . and became instead a referendum on the correctness of the parties' agreement and the Court's Joint Pretrial Order, on the policy terms and coverage, on the claim-handling and underwriting procedures, and on alleged representations by the sales agent prior to the alleged loss." *Id.* at ¶ 31.

While Defendant correctly argues that "[a]ll of these issues fall outside the authority of the appraisers and umpire," neither Plaintiff's appraiser nor the umpire made a decision on any issue outside the scope of their authority. They both submitted appraisals of the ACV and repair value of the property. The issue of authority centers upon whether the appraiser or umpire "acts in excess of the authority conferred upon him by the appraisal agreement." *Fisch*, 356 S.W.2d at 190. Here, Plaintiff's appraiser submitted an appraisal on the issue of valuation pursuant to the insurance policy and the pretrial order. *See* Def.'s Mem. Supp. Mot. to Set Aside ¶ 19, ECF No. 34. Since there was disagreement between Plaintiff's and Defendant's appraisers, the umpire was empowered to make his own appraisal. *Id.* at ¶ 23. The umpire then laid out an appraisal on the amount of loss pursuant to the insurance policy and the pretrial order. *Id.* Unlike in *Fisch*, the umpire did not preemptively act before considering all of the appraisals in contravention of the insurance policy. *See, e.g. Fisch*, 356 S.W.2d at 190. Nor, like the umpire in *Wells*, did the umpire improperly decide issues of causation, liability, or coverage. *See, e.g. Wells*, 919 S.W.2d at 683. The umpire in the instant case received two appraisals on the issue of valuation and then, as he was empowered to do under the policy, produced his own award valuing the property.

There is no evidence that the award discusses, touches upon, or references liability, coverage or causation.

Therefore, the umpire acted within his authority under the insurance policy and the pretrial order.

## VI.   CONCLUSION

The Court finds and concludes that Defendant's Motion to Set Aside, to the extent founded upon grounds one, two and three (ECF No. 34) should be and hereby is **DENIED**. Pursuant to the Joint Pretrial Order, the sole remaining genuine issue of material fact in this case was the valuation of the subject property.  Since the Court has denied Defendant's Motion to Set Aside (ECF No. 34), there is no longer any issues of material fact.  The motion before the Court, while not labeled a motion for summary judgment, centered on the sole remaining issue in the instant litigation: the validity of the appraisal.  Def.'s Mot. To Set Aside, ECF No. 34.  Plaintiff's response, similarly, dealt only with that issue.  Pl.'s Resp. Def.'s Mot., ECF No. 38.  Thus while not denominated motions for summary judgment, the parties' sought summary judgment on the appraisal issue briefed to the Court.  Moreover, even absent such a consideration, a "district court may grant summary judgment sua sponte –so long as the losing party was on notice that she had to come forward with all of her evidence." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 145 n.29 (5th Cir. 2004) (quoting *Celotex v. Catrett*, 477 U.S. 317, 326 (1986)).  Notice means that a party had reason to believe the court might reach the issue and –received an opportunity to put its best foot forward." *Id.* (quoting *Leyva v. On the Beach Inc.*, 171 F.3d 717, 720 (1st Cir. 1999).  Defendant, as the moving party on the sole issue before the court, had ample opportunity to "marshal its facts and put its best foot forward." *Id.*  There is thus no doubt in this case that St.

Paul had the requisite notice.  As such, it is hereby **ORDERED** that Defendant's Complaint to the extent based upon the first three grounds is **DISMISSED** with prejudice.  **IT IS FURTHER ORDERED** that due to a want of subject matter jurisdiction and/or the decision to decline to exercise jurisdiction as set out above, Defendant's Complaint to the extent based upon the final two grounds (fraud, accident, and mistake) and Plaintiff's counterclaims are **DISMISSED** without prejudice..

So **ORDERED** on this **5th** day of **October, 2010.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**